IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| THOMAS N. DURDICK, # 332552, ) | Civil Action No. 3:11-2979-CMC-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| DIRECTOR WILLIAM R. BYARS, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Defendant. ) | |
| _____ ) | |

The pro se Plaintiff, Thomas N. Durdick, filed this action on November 2, 2011.[1] He is an inmate at the Kirkland Correctional Institution of the South Carolina Department of Corrections ("SCDC"). Defendant, SCDC Director William R. Byars, filed a motion for summary judgment on July 30, 2012. Plaintiff, because he is proceeding pro se, was advised on July 31, 2012, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendant's motion for summary judgment could result in the dismissal of his complaint. Plaintiff filed a response on September 4, 2012.[2]

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02 (B)(2) DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the court.

[2] Plaintiff appears to argue that Defendant's motion for summary judgment should be denied because the undersigned granted Defendant's requests for extensions of time to file his answer and to file his motion for summary judgment without allowing Plaintiff adequate time to respond to the motions. He has shown no prejudice as to the granting of these short extensions of time. Plaintiff argues that Defendant's counsel asked for an extension to obtain an affidavit from Defendant, but failed to do so. Review of the motion, however, reveals that Defendant requested an extension of time to draft a motion, memorandum, and supporting affidavits (from unspecified persons). Defendant submitted supporting affidavits from SCDC employees with his motion for summary judgment. See Doc. 26.

## STANDARD OF REVIEW

Pro se complaints are held to a less stringent standard than those drafted by attorneys, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978), and a court is charged with liberally construing a complaint filed by a pro se litigant to allow for the development of a potentially meritorious case. See Hughes v. Rowe, 449 U.S. 5, 9 (1980). The requirement of liberal construction, however, does not mean the court can ignore a clear failure to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Dep't. of Soc. Servs., 901 F.2d 387 (4th Cir.1990).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The moving party "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If the moving party carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson, 477 U.S. at 247-48).

## DISCUSSION

Plaintiff alleges that his freedom of religion, access to the courts, due process, and equal protection rights have been violated. Complaint at 2. In particular, he claims that inmates in protective custody do not receive religious services and classes; have no access to programs including rehabilitative and educational programs; are not allowed to take showers on weekends and

sometimes have to take showers before their recreation period; do not receive recreation on weekends, holidays, or periods when it is too hot or too cold; are not allowed to use the restroom during recreation or visitation; do not have access to as many exercise equipment options as general population inmates; are strip searched coming and going from recreation, medical, and visitation; are served food that is not hot and are served food in an unsanitary manner; do not have a place to eat their food (a table or desk); only receive two food trays a day on the weekends; are subjected to unsanitary conditions in their cells; cannot clean their rooms on holidays and weekends; receive less visitation hours and less desirable visitation times than general population inmates; cannot get their pictures taken with family members; are only allowed to make one telephone call a day and only after 7:00 p.m.; can only use the microwave two times a day; can only spend $75 on canteen items rather than the $100 or more general population inmates are allowed to spend; are not allowed the same personal property as general population inmates; do not receive the same number of work credits as general population inmates; have problems with mail delivery; do not get to go to the law library, do not have a law clerk, do not have enough legal resources, and are only allowed three books two times a week; and cannot have copies made. He also alleges that SCDC policies (including those concerning the opening times of cell food flaps and the length of time a guard is assigned to work in the protective custody unit) are not followed. Plaintiff also alleges that Lt. Graham calls inmates on protective custody "cry babies," "snitches," and "crooks," and "threatens to pepper spray for no reason." He also claims that Lt. Graham retaliates against inmates for filing grievances by shaking rooms down, and taking recreation or privileges away for no reason.[3] Plaintiff requests injunctive

---

[3]Lt. Graham is not a party to this action. Further, bare assertions of retaliation do not establish a claim of constitutional dimensions. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).
(continued...)

3

relief including that protective custody inmates receive the same rights and privileges that are given to the general population.

Defendant contends that he is entitled to summary judgment because: (1) Plaintiff failed to exhaust his available administrative remedies as to a number of his claims; (2) Plaintiff fails to establish an equal protection or due process claim; and (3) Plaintiff's claims for injunctive relief fail because he has not exhausted his remedies as to the vast majority of the issues, he has not pled that these conditions violate his Eighth Amendment rights, and the issues and claims for injunctive relief do not state constitutional deprivations.

1. Administrative Remedies

Defendant contends that Plaintiff has only exhausted his administrative remedies as to some of his claims and that those issues which have not been administratively exhausted should be dismissed for Plaintiff's failure to exhaust. "No action shall be brought with respect to prison

---

³(...continued)
In order to state a claim for retaliation, an inmate must show that the alleged retaliation had an adverse impact on the exercise of his constitutional rights. Id. at 75. "In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition "retaliatory" in the sense that it responds to prisoner misconduct.'" Cochran v. Morris, 73 F.3d 1310 (4th Cir. 1996)(en banc)(citing Adams, 40 F.3d at 74).

Plaintiff also fails to show that the alleged comments rise to the level of a constitutional violation. Such deplorable and unprofessional behavior does not by itself rise to the level of a constitutional violation. See Patton v. Przybylski, 822 F.2d 697, 700 (7th Cir.1987); Carter v. Morris, 164 F.3d 215, 219 n. 3 (4th Cir. 1999). Further, verbal abuse of inmates, without more, fails to state a claim under § 1983. Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996)(disrespectful and assaultive comments did not violate Eighth Amendment); McDowell v. Jones, 990 F.2d 433, 434 (8th Cir. 1993)(verbal threats and name calling are usually not actionable under § 1983); Northington v. Jackson, 973 F.2d 1518, 1524 (10th Cir. 1992); Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979)(sheriff's idle threat to hang a prisoner did not give rise to a § 1983 claim); Lamb v. Hutto, 467 F. Supp. 562 (E.D.Va. 1979)(verbal assaults and threats do not state a constitutional claim actionable under § 1983).

conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court held that the Prison Litigation Reform Act's, 42 U.S.C. § 1997, exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter, 534 U.S. at 532. The Fourth Circuit, in Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674 (4th Cir. 2005), held that an inmate's failure to allege exhaustion does not constitute failure to state a claim and the failure to exhaust is an affirmative defense that should be pleaded or otherwise properly raised by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies." Id. at 683.

Ann Hallman, the Branch Chief for the Inmate Grievance Branch, states that Plaintiff filed grievances as to the following issues:

(1) Request to have cell door flaps open from 6:00 a.m. to 9:00 p.m.

(2) Meals are delivered cold and on dirty and cracked food trays

(3) Inmates on protective custody should have the same privileges as general population inmates - should have "no property restrictions [and should have] church services, education programs, arts and crafts."

(4) Request to have desk in his cell

(5) Lt. Graham has been assigned to Statewide Protective Custody unit for more than 24 months

5

Hallman Aff., Para. 3. She states that none of Plaintiff's grievances address the allegations raised in Plaintiff's Complaint concerning a lack of rehabilitative services or programs, an inability to take showers on weekends or after recreation; visitation issues (including lack of bathroom facilities during visitation, the quantity and scheduling of visits, and availability of photography during visitation); lack of recreation on weekends and holidays; lack of access to bathroom facilities and shade while on recreation; lack of access to certain recreational activities (hand ball, exercise bars, and rubber horse shoes); the use of strip searches; the lack of cleanliness of food cart used to deliver meals to the Statewide Protective Custody unit; lack of cleanliness of the Igloo cooler from which he receives drinks; the quantity of food that is served; the use of the food flap in the cell door to deliver meals; the cleanliness of cells in the Statewide Protective Custody unit including mold and fungus on walls; lack of ability to clean cells on weekends or holidays; lack of hooks or hangers in cells on which to hang towels or wash clothes after showers; telephone privileges; canteen privileges; the limits on the use of a microwave; the limits on access to hobby craft programs; earned work credits issues; access to the courts issues (including access to the law library and law clerks); lack of access to a typewriter; photocopying issues; library-related issues; verbal abuse from officers; discrimination issues because most of the protective custody inmates are white;[4] and the location of the Statewide Protective Custody unit. Hallman Aff., Para. 5. Plaintiff appears to argue that Hallman did not submit copies of all of his grievances with her affidavit. He has, however, presented no copies of his grievances or provided anything to dispute that he failed to properly exhaust his

---

[4]Although racial discrimination claims are actionable, Henry v. Van Cleve, 469 F.2d 687 (5th Cir. 1972), merely conclusory allegations of discrimination are insufficient to state a claim. See Chapman v. Reynolds, 378 F. Supp. 1137 (W.D. Va. 1974)("[A]bsent some factual evidence the court will not look behind the determinations of prison officials on mere accusations that they are racially motivated.").

6

administrative remedies as to the issues which Defendant asserts have not been exhausted. Thus, Defendant's motion for summary judgment should be granted as to Plaintiff's claims which have not been exhausted.

      2.      <u>Equal Protection/Due Process Rights</u>

Plaintiff appears to allege that his equal protection rights were violated because inmates in protective custody do not have the same rights and privileges as general population inmates. He also appears to allege that his lack of privileges/programs in protective custody violates his due process rights. Defendant contends that Plaintiff has not proven a violation of his equal protection or due process rights based on the restrictions and limitations applicable to inmates on the Statewide Protective Custody unit. Defendant appears to argue that Plaintiff is only similarly situated to other inmates on protective custody and that he cannot compare himself to general population inmates where he personally requested differential treatment due to his safety concerns.[5] Additionally, Defendant argues that the Fourth Circuit has upheld similar equal protection and due process claims as asserted by Plaintiff, and that the differences in treatment among prisoners in the Statewide Protective Custody unit and in the general population have a rational basis in legitimate penological objectives.

An equal protection claim arises when, without adequate justification, similarly-situated persons are treated differently by a governmental entity. U.S. Const. amend XIV. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from

---

[5] Associate Warden Staley provides that Plaintiff sought protective custody on his first day at SCDC because of his previous employment as a police officer and the nature of his offenses (Criminal Sexual Conduct with a Minor First Degree and Lewd Act upon a Child under Sixteen). Staley Aff., Paras. 5-7.

7

others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, (4th Cir. 2001). When the distinction is based on a "suspect classification" or effects the denial of a fundamental right, the constitutional scrutiny sharpens in focus to determine whether the classification is narrowly tailored to serve a compelling governmental interest. See Plyler v. Doe, 457 U.S. 202, 216-17 (1982). Inmates in protective custody are not a suspect class and regulations concerning their treatment are subject to rational basis review. See Allgood v. Morris, 724 F.2d 1098, 1101 (4th Cir. 1984).

The Fourth Circuit has held "that conditions imposed on [protective custody inmates that are] less favorable than those afforded the general prison population do not give rise to a meritorious claim of denial of equal protection or a denial of due process where the restrictions bear a rational relationship to the protection of the prisoner requesting such relief and where the restrictions are not so onerous as to jeopardize his health." Taylor v. Rogers, 781 F.2d 1047, 1050 (4th Cir.1986).

Nena W. Staley, the Associate Warden at Kirkland in charge of programs, states:

Because of the security risks, Statewide Protective Custody inmates require segregation from the general population and each other including during recreation, showering and participating in all other out-of-cell activities. As a result, Statewide Protective Custody inmates are not permitted to participate in group educational classes, communal religious services or other group programs offered to the general population.

Staley Aff., Para. 12. Staley states that the SCDC does not have the financial resources or manpower to provide individualized security to every inmate who perceives a threat to his safety and that the restrictive environment of a Statewide Protective Custody assignment (which is not designed to be a favored or comfortable classification or housing assignment) serves the purpose of minimizing requests for protection so only those inmates with real and severe security risks will seek custody, thereby allowing SCDC to properly prioritize its resources. See Staley Aff., Para. 11. Staley states:

> the restrictive environment of the Statewide Protective Custody unit, including the specific restrictions referenced above, serves as a deterrent for other inmates to request this classification unless necessary for legitimate security and safety concerns. The security concerns of Statewide Protective Custody inmates place a much higher burden on SCDC staff than that of general population inmates. The restrictions on privileges available to those inmates seek to diminish the attraction to the program thereby keeping the number of Statewide Protective Custody inmates at an appropriate workable, and economically feasible level.

Staley Aff., Para. 26.

The restrictions placed on Plaintiff as a protective custody inmate serve legitimate penological interests in that they discourage unwarranted requests for protection and unnecessary inclusion in protective custody while providing the necessary security and minimizing the financial and staff impact necessary to house protective custody inmates. Thus, the restrictions placed on Plaintiff are rationally related to the need for prison security and order. Furthermore, there is no evidence the restrictions are so onerous as to jeopardize Plaintiff's health. As such, it is recommended that Defendant's motion for summary judgment be granted as to Plaintiff's equal protection and due process claims.

      3.     <u>Injunctive Relief</u>

Plaintiff requests injunctive relief. Defendant contends that the Court need not address the merits of each of Plaintiff's claims for injunctive relief because the vast majority of the issues raised by Plaintiff have not been administratively exhausted and Plaintiff has not pled that these conditions violate his Eighth Amendment rights (as he has only alleged equal protection and due process claims). Additionally, Defendant argues that Plaintiff's numerous claims for injunctive relief do not state constitutional deprivations even when viewed individually.

As discussed above, Plaintiff has failed to exhaust his administrative remedies as to the majority of his claims. To the extent that Plaintiff has exhausted his administrative remedies and to

the extent he has pled that Defendant's actions violate his constitutional rights, he fails to show that he is entitled to the injunctive relief he seeks.

Plaintiff fails to show that his Eighth Amendment rights were violated merely because he did not receive the same privileges as inmates in the general population. A requirement that protective custody inmates give up certain amenities available to inmates in the general population does not violate the Eighth Amendment. Taylor, 781 F.2d at 1050; Allgood, 724 F.2d at 1100.

The Eighth Amendment provides protection with respect to "the treatment a prisoner receives in prison and the conditions under which he is confined." Helling v. McKinney, 509 U.S. 25, 31 (1993). However, the constitutional prohibition against the infliction of cruel and unusual punishment "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991). Eighth Amendment protection from cruel and unusual living conditions has both objective and subjective components. First, deprivations must be objectively serious in the sense that they violate contemporary notions of decency. Rhodes v. Chapman, 452 U.S. 337 (1981). Second, the plaintiff must show that subjectively the prison officials acted with a sufficiently culpable state of mind. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.), cert. denied, 510 U.S. 949 (1993). The Supreme Court has held that prison officials cannot be held liable under the Eighth Amendment unless they knew of and disregarded an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825 (1994). A plaintiff must produce evidence of serious or significant physical or emotional injury resulting from the challenged conditions to withstand summary judgment on a prison living conditions claim. Strickler, 989 F.2d at 1380-81.

Plaintiff fails to show that he suffered any serious or significant physical or emotional injury as a result of his living conditions including the food he is served,[6] intermittent restrictions on out-of-cell recreation,[7] the times he is allowed to shower, and the cleanliness of his cell. Plaintiff also fails to show that subjectively the prison officials acted with a sufficiently culpable state of mind.

Plaintiff also fails to show that his constitutional rights have been violated based on his receipt of less privileges than inmates in the general population. He has not shown that he has a protected liberty interest in making phone calls. See United States v. Alkire, No. 95-7885, 1996 WL 166400, at *1 (4th Cir. Apr.10, 1996)(no constitutional right to the use of a telephone in prison); Hadley v. Peters, No. 94-1267, 70 F.3d 117 (7th Cir. Nov. 9, 1995)("The denial of telephone privileges for ten days is not a matter of constitutional dimension."), cert. denied, 517 U.S. 1111

---

[6]Prisons and detention facilities are required to provide "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." See French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985), cert. denied, Owens v. French, 479 U.S. 817 (1986). Assuming a diet's nutritional adequacy, prison officials have the discretion to control its contents. Divers v. Dep't of Corrs., 921 F.2d 191, 196 (8th Cir. 1990); see also Madyun v. Thompson, 657 F.2d 868, 874-75 (7th Cir. 1981)(allegation that food served to segregated prisoners was cold and not on the menu served to general prison population was insufficient to state an Eighth Amendment violation); Hoitt v. Vitek, 497 F.2d 598, 601 (1st Cir. 1974)(prisoners' allegation of deprivation of hot meals failed to state a claim of cruel and unusual punishment, given the stipulation that three meals were provided daily); Prophete v. Gilless, 869 F. Supp. 537 (W.D. Tenn. 1994)(food which was cold by the time it was served did not constitute cruel and unusual punishment).

[7]See, e.g., Mitchell v. Rice, 954 F.2d 187, 193 (4th Cir. 1992)(although as a general rule the denial of out-of-cell exercise for an extended period violates the Eighth Amendment, exceptions may be made under exigent circumstances that necessitate constriction of these rights), cert. denied, 506 U.S. 905 (1992); see also Chavis v. Fairman, 51 F.3d 275, 1995 WL 156599 (7th Cir. 1995)[Table]("generally, even dramatic restrictions on outside exercise do not violate the Eighth Amendment (or due process, where pretrial detainees are at issue) so long as prisoners have ample opportunity to enjoy indoor activity"); Curtis v. Fairman, No. 95 C 5538, 1997 WL 159319 (N.D. Ill. Mar. 24, 1997)(detainee in segregation who was denied out-of-cell recreation for a twenty-nine day period failed to state a claim where he did not assert that he was unable to exercise within the confines of his cell or that his health was threatened by the denial of recreation).

11

(1996); May v. Baldwin, 895 F. Supp. 1398, 1409 (D.Ore. 1995)(brief suspension of television and telephone privilege does not amount to constitutional violation), aff'd, 109 F.3d 557 (9th Cir. 1997), cert. denied, 522 U.S. 921 (1997). Plaintiff admits that he is allowed to make one phone call a day, although it is not at the time he desires. Canteen access is also not a protected liberty interest. See, e.g., Madison v. Parker, 104 F.3d 765, 768 (5th Cir. 1997) (holding that commissary restrictions did not entitle inmate to due process protections during disciplinary proceeding); Bennett v. Cannon, C/A No. 2:05-2634-GR, 2006 WL 2345983, at *2 (D.S.C. Aug.10, 2006) ("[t]here is simply no freestanding constitutional right to canteen privileges at all"). Plaintiff admits he has canteen privileges and merely challenges the amount of money he is allowed to spend in the canteen. Prisoners do not have an affirmative constitutional right to visitation. White v. Keller, 438 F.Supp. 110, 115 (D.Md.1977) (but leaving open the possibility that a permanent ban on all visitation could implicate the Eighth Amendment), aff'd, 588 F.2d 913 (4th Cir.1978); see also Kentucky Dep't of Corrs. v. Thompson, 490 U.S. 454, 461, (1989) (finding no right to visitation guaranteed by the Due Process Clause). Here, Plaintiff admits he is allowed visitation, although not at the times he desires.

Plaintiff also fails to show that he is entitled to injunctive relief as to his access to prison programs, a prison job, hobby craft activities, or work credits. See Beck v. Lynaugh, 842 F.2d 759, 762 (5th Cir. 1988)(state has no constitutional obligation to provide basic educational or vocational training programs to prisoners)(citing Newman v. State of Alabama, 559 F.2d 283, 292 (5th Cir. 1977), rev'd in part on other grounds sub nom., Alabama v. Pugh, 438 U.S. 781 (1978)); Hoptowit v. Ray, 682 F.2d 1237, 1254-55 (9th Cir. 1982)(individuals serving criminal sentences have no constitutional right to rehabilitation while in prison); McCray v. Sullivan, 509 F.2d 1332, 1335 (5th Cir.), cert. denied, 423 U.S. 859 (1975) (failure to provide rehabilitation, by itself, does not constitute

a violation of Eighth Amendment); Abdul-Akbar v. Department of Corrs., 910 F. Supp. 986, 1002 (D. Del. 1995)(no right to drug treatment, employment, or other rehabilitation, education, or training programs in prison). A plaintiff has no constitutional right to participate in prison programs, so his ineligibility for a prison work program is not a deprivation of constitutional magnitude. See Hewitt v. Helms, 459 U.S. 460 (1983); Altizer v. Paderick, 569 F.2d 812 (4th Cir.), cert. denied, 435 U.S. 1009 (1978)(custody classifications and work assignments are generally within the discretion of the prison administrator); Gibson v. McEvers, 631 F.2d 95, 98 (7th Cir. 1980)("An inmate's expectation of keeping a certain prison job does not amount to a property or liberty interest entitled to protection under the Due Process Clause."); Alley v. Angelone, 962 F. Supp. 827, 834 (E.D.Va. 1997)(prisoner did not have a protected interest in continued employment because lack of employment was clearly within the range of confinement which could be expected by most inmates). Although a prisoner may have due process rights as to good-time credits which are taken away from him, the opportunity to earn good-time or work credits is not a constitutionally established liberty interest. Wolff v. McDonnell, 418 U.S. 539, 557 (1974); see Sandin v. Conner, 515 U.S. 472 (1995).

Plaintiff has not shown that he is entitled to injunctive relief as to his ability to practice his religion. Defendant argues that Plaintiff has not shown that he has a constitutional right to participate in communal worship or study, has not alleged that he is denied all means to practice his faith, and has not even alleged what faith he practices. There is no indication that Plaintiff is unable to exercise his religion in his own cell. Defendant has asserted legitimate penological reasons (security) for his actions as to the restrictions on protective custody. See, e.g., Sweet v. South Carolina Dep't of Corrs., 529 F.2d 854 (4th Cir. 1975)(inmates in protective custody need not be permitted to attend group religious services).

Plaintiff fails to show that he is entitled to injunctive relief as to his access to the courts including his access to a law library, library services, a law clerk, a typewriter, or copies. To the extent that Plaintiff is alleging denial of access to the courts, he has not shown any actual injury. See Bounds v. Smith, 430 U.S. 817 (1977); Lewis v. Casey, 518 U.S. 343 (1996). As to his wish to have copies made, Plaintiff has not asserted that he is unable to handwrite copies of his documents. See, e.g., Lyons v. Clark, 694 F. Supp. 184, 188 (E.D.Va. 1988)(inmates do not have unlimited rights to photocopies), aff'd, (4th Cir. 1989)[Table]; Johnson v. Moore, 948 F.2d 517, 521 (9th Cir. 1981)(denial of free photocopying does not amount to a denial of access to the courts); Harrell v. Keohane, 621 F.2d 1059, 1061 (10th Cir. 1980).

Plaintiff also fails to show that he is entitled to injunctive relief as to his allegations that Defendant fails to comply with SCDC policies (including that cell-door flaps are not kept open during all required hours and that Lt. Graham has been assigned to the Statewide Protective Custody unit for more time than allowed). Plaintiff has not alleged that Defendant Byars had any personal responsibility for the hours the cell-door flaps are open or alleged that this or Lt. Graham's assignment to the unit violates the Constitution. Allegations that a defendant did not follow SCDC policies or procedures, standing alone, do not amount to constitutional violations. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

## **CONCLUSION**

Based on review of the record, it is recommended that Defendant's motion for summary judgment (Doc. 30) be **granted**.

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　Joseph R. McCrorey
　　　　　　　　　　　　　　　　　　United States Magistrate Judge

September 28, 2012
Columbia, South Carolina

**The parties are referred to the Notice Page attached hereto.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).